Thank you, your honor. Good morning and may it please the court. Let me start by addressing the district court's grant of summary judgment against Mrs. Rothenberg on her negligence claims against Mr. Bagby. This includes not only Donna's claims against Mr. Bagby, but also Donna's claims against principal that it is liable under principles of respondeat superior for Mr. Bagby's negligence when he delivered the policy and was collecting the premium because Bagby was acting as principal's agent at the time. The basis of that grant of summary judgment was the district court determined that Bagby's and principal's sole duties in this case were owed to Rob Rothenberg and they did not owe any duties to Donna. That determination was erroneous both as a factual matter and a legal matter as well. From a factual standpoint, there are facts on the record from which the trier of fact could find that in undertaking to procure the principal policy, Bagby was acting on behalf of both Donna and Rob as a married couple and thus owed duties to Donna as well as Rob. Those facts include that for more than 20 years Bagby served as insurance broker, financial planner, and as Rob. Donna and Rob were married throughout their 20-year relationship. Mr. Grineman, if he is principal's agent, isn't Donna then just an incidental beneficiary? No, your honor. He was actually acting as a dual agent. Mr. Bagby initially was engaged as broker and agent for Donna and Rob to procure the policy, but then because of legal requirements under Missouri state law and the way principal does business, they required that he become principal's agent as well for certain purposes in selling the policy to the Rothenbergs. That agency most directly related to his duties in having Rob execute the policy documents and collecting the premium. So at different times, he was acting in a different capacity. Sir, what is the duty here? The duty is to procure the insurance that the insured asked Mr. Bagby to procure, which was a life insurance policy that would be in effect. And most specifically, he should have competently performed the duties of having Rob execute the policy documents properly, including providing all the requirements that were specified in the EFT form. Well, the best indication I have of Missouri law is the agency owes no duty to maintain the insurance or to advise them to pay the premiums? It looks to me like Missouri says there's no duty here. Well, I believe that case is distinguishable, your honor. The law provides that, you know, first of all, the duty depends on the facts of the case and what the broker was asked to do, and there is a whole line of Missouri cases, and we cite an ALR annotation of cases around the country providing that a broker may be held liable for failing to procure the insurance they undertook to obtain or procure. Well, Matthews has some killer quotes for your duty, just bluntly. What Missouri cases are contrary points in Missouri law? I heard you go to other states and ALR and all that, but what do you have in Missouri? I think the Ritchie v. Phillip case is significant, and also the Lopez v. Three Rivers electrical co-op case is significant. Three Rivers makes clear that what drives the recognition of duty is foreseeability, and here the whole purpose of obtaining the insurance was to protect Donna. Bagby knew that. In fact, Mr. Bagby raised that point. Rob initially had the thought of maintaining just Donna's policy on her life, of which he was the beneficiary, and Bagby told him, no, you need to maintain the policy on your life because you're the sole income earner in the family. So the whole context of what he was asked to do gives rise to the duty. With respect to other facts that demonstrate that Mr. Bagby was acting on behalf of both Donna and Rob, Bagby worked out of Donna and Rob's accountant's office. That's how they met him, and they viewed Mr. Bagby as a one-stop shop for their life insurance, financial advisory, investment management, and financial planning needs. As I said, what Bagby was asked to do was to procure insurance that was going to protect Donna. According to the record, evidence in this case, the only life insurance Donna and Rob ever had, aside from the principal policy, consisted of the two Jackson National policies that Bagby sold to them in 1999. One was a policy on Donna's life, and the other was a policy on Rob's life. So based on the factual record here, we believe it can and should be concluded as a matter of undisputed fact that Mr. Bagby was acting for Donna as well as Rob, and therefore owed duties to both of them. But at the very least, it must be concluded that the factual record in that regard is disputed, and either way, it was error for the district court to grant summary judgment against Donna. In concluding, Your Honors, that Mr. Bagby owed no duty to Donna, the court relied on the Fork case and the William Ranney case. But both of those cases are clearly distinguishable from this controversy as we discuss in our brief. The court attempted to distinguish the cases that we rely on, stating that in the cited cases, the insurance policy was in full force in effect at the time of the decedent's death, and the primary issue was whether the plaintiffs could prove they were the intended beneficiaries. Mr. Grineman, does the record reflect whether Bagby ever had any contact with Donna? It doesn't reflect any contact with Donna with respect to procuring the principal policy, other than after Rob's death, in which Mr. Bagby did procure a voided check from Donna and deliver that to principal, which I think is significant. It shows that Mr. Bagby was acting on behalf of Donna. Just a housekeeping issue, can you help me distinguish between count three and count four? Is one based on financial advisor agency and one based on insurance brokerage agency, is that right? Count three, Your Honor, is a simple negligence claim based on Mr. Bagby's breach of duties and principal's liability on responding. Count four relates to a different set of activities in failing to make sure, in procuring the insurance for Rob and Donna, that there was no gap between the effect of the principal policy and the expiration of the Jackson National Policy. And that is based on a couple of discrete sets of facts. One is what Rob asked Mr. Bagby to do, and we maintain it was to obtain a replacement policy for the Jackson National policies. And by replacement, one would think that it was important to make sure that the insurance, that they remained insured at all time and there was no gap. Mr. Bagby testified in his deposition, it never occurred to him to make sure there was no gap in coverage. But the second prong of the claim in count four does relate to there being a heightened standard of care due to the deep and wide relationship, long standing relationship that Mr. Bagby had with Donna and Rob. Do you have any financial advisor allegations in count three? Same question, a different way. No, Your Honor. Okay, proceed. No. Another point, Your Honors, is that in granting summary judgment against Donna and in favor of both Mr. Bagby and principal, the district court improperly resolved disputed factual issues against Donna. As examples of this, at page four of the court's memorandum in order, the court states Rob had not completed the bank information required on the EFT form. Rob did not attach a voided check. Rob left without providing a voided check or otherwise completing the form. And the district court goes on to make similar determinations or findings at page 11. So it's clear from the opinion that the district court faulted Rob for failing to provide the necessary banking information. But the court ignores the fact that it was Mr. Bagby, not Rob, who filled out the EFT form before Rob got to his office. Mr. Bagby, in filling out the form, failed to include any banking information, failed to flag on the form for Rob anything to the effect that he needed to provide a voided check or write in the bank information. And the evidence shows that when Rob got to Bagby's office, Mr. Bagby simply placed the form in the other forms that needed to be signed in front of Rob. Had him sign the form. Mr. Bagby allowed Rob to leave his office believing everything necessary to put the policy in force had been done. Mr. Bagby failed to review the paperwork before Rob left. When these facts are considered, it's evident Mr. Bagby was principally at fault for the omission here. Bagby was the professional in the relationship. It was his job to make sure everything was done right. The district court failed to take those facts into account and therefore failed to consider the impact on the claims here of Mr. Bagby being at fault. Some of the ramifications of the district court's failure to consider Mr. Bagby's fault is the whole body of facts was skewed and the court failed to take into account When you look at the record and ascribe fault to Mr. Bagby, for Principal and Bagby to prevail, it requires that certain ambiguities in the policy documents be resolved in favor of Donna rather than Principal and Bagby. But the court did the opposite. It allowed Principal, contrary to law, to take advantage of and benefit from its agent's fault and hindering Rob from earlier providing the banking information. And it ignored the fact that there was substantial performance of the condition precedent to the policy. If the court has no further questions, I would reserve the balance of my time for rebuttal. Thank you. Thank you, Mr. Griman. Good morning, Your Honors. May it please the court. Counsel. I'm Edna Kirsting and I'm here for the plaintiff, counter-defendant, Eppley, Principal, National Life Insurance Company. This is a tragic case. It's an emotional, difficult case. And our sympathies are with Ms. Rothenberg. Legally speaking, however, especially with regard to the question of whether or not there was coverage at the time Dr. Rothenberg died, this is a significant case. It's a significantly more straightforward case. And the district court's grant of summary judgment stands on all fours with case law and the policy language in this case. We cite 71 cases in our brief, as pointed out by Ms. Rothenberg in her reply brief, because they are 71 cases and more in support of Principal National's position in this case. While Ms. Rothenberg attempts to relitigate summary judgment rather than appeal the district court's order by engaging with the district court's reasoning, we believe that— Our review is de novo, though, right, counsel? Yes. Proceed. Of course. All of her maneuvering does not change the facts of this case. And the facts of this case are that Dr. Rothenberg, when he applied for insurance coverage, agreed that the effectiveness of that insurance coverage was conditioned upon receipt of the initial premium. So not only did he apply, he did not purchase a conditional receipt with his application. It is undisputed that Principal issued the policy as applied for, that Mr. Bagby contacted Dr. Rothenberg to set up a meeting to discuss delivery, and specifically mentioned the payment of the initial premium. It is further undisputed that Mr. Bagby did meet with Dr. Rothenberg. Counsel, you keep saying payment. I thought if the form was filled out properly, the insurance was in effect. Am I wrong? If the form had been completed completely, yes. So it's not payment in this case that decides it like many cases, correct? Providing the banking information would constitute payment. Okay. So even if you fill in phony numbers there, it constitutes payment. No, that is incorrect. The Dallas v. American General Court, Your Honor— No, I'm talking about your case. In your case, the way the provision reads, even if it had bad banking information, it'd be in effect, right? I would disagree with that. Okay, is your Dallas case a Missouri case? It is a Missouri case. Okay, tell me about it. It's out of the Eastern District of Missouri, and it went up to the Eighth Circuit. Great. Oh, but it's not a Missouri state case. You and I talked right past each other. Right, it is a federal case, but it was in Missouri, and the Eighth Circuit relied on Missouri law. Okay. With the premise that it's a precondition, and in that specific case, Ms. Dallas provided incorrect banking information, and the premium could not be drawn. Was that a payment case, or was that a fill-out-the-form case? It was a fill-out-the-form case. You're sure of that, huh? It was incorrect information on the form. The premium could not be drawn, and the decedent died. The proposed insurer died without the policy becoming effective. Now, again, are we talking past each other? Because you're a fill-out-the-form right, the insurance starts, right? Case. Yes, that is correct. It's not when the money comes out of the... You know what I'm saying. Yes, I know what you mean. When the proper banking information is provided. Is that true of the Dallas case you referenced? I understand the Dallas case the same way. Okay, thank you. Granted, the timing was a little different in the Dallas case. There was a longer period of delay between the completion of the paperwork and the death. In this case, it was the same day. However, the principles of the Dallas case govern in this case as well. I believe I was at the point where it's undisputed that Mr. Bagby met with Dr. Rothenberg. The policy was delivered. Dr. Rothenberg signed the delivery paperwork. And then on the EFT form, which we just discussed, he did not include his banking information. Meaning the form was signed. However, Dr. Rothenberg did not include the portions with the asterisk which was needed for principle to actually draw the premium payment. And it's also undisputed that Dr. Rothenberg left without providing a voided check that would have included the banking information which could have been attached to the EFT form. And left without leaving a check that was written out to principle national for the premium amount. Which would have likely satisfied in this case. Neither one happened in this case. And per the clear language of the policy, which was agreed to by Dr. Rothenberg and which has been perpetually ignored by Ms. Rothenberg in her briefing, the payment of premium and or providing the information that would allow principle to actually draw the premium was a condition precedent to coverage. A condition that wasn't satisfied in this case. And I submit, Your Honor, that that's not a novel concept. A contract needs an offer and an acceptance and it needs consideration. And there was no consideration in this case. And Missouri law stands for the premise that cases where there is consideration, those are cases where there's a condition precedent to effectiveness of the coverage. There's not a condition subsequent as set out by the 8th Circuit in Dallas. It's a condition precedent. And that condition precedent was not realized in this specific case. Counsel, now the other side has long quotes from the Dallas case that says it is a payment case. Do you know that in their reply brief? I understand that that's what they're alleging. They're trying to find differences. No, not alleging. We're talking about what the Dallas case says. Yes. So help me. They say it's a payment case. No payment deems remain until they get actual payment of the cash. Not a fill out the form case like this one. Are they accurate on pages? They do have that language in the case. That is correct. In the Dallas case? In the Dallas case, yes. Okay. I'm sorry. I misunderstood what you told me before. Proceed. Okay. And the consideration in this specific case that was needed was not provided by Dr. Rothenberg. We believe that Ms. Rothenberg made much ado about submitting the voided check a few days later. That voided check was received by principal on May 5. And it is her assertion that that should suffice to put the coverage in effect. And that given the fact that completion of the form would have sufficed, submission of the voided check a few days later, that's the exact wording that's being used in the briefs, should suffice in this specific case as well. And it is our assertion that that is not the case given the fact that at that point, when the check was received, Dr. Rothenberg was no longer in the condition that he was when he completed the application. He was not in the same state of health. The coverage could not become effective on May 5 due to the fact that he had died at that point. And a dead person cannot be insured under a life insurance policy starting at that point in time. Just a brief more comments. I'm almost out of time, Your Honors. With regard to the breach of fiduciary duty claim, we believe that given the fact that the policy never became effective, there were no duties that flowed to Ms. Rothenberg at any point in time. As the district court set out, a policy that's not effective cannot create any duties. In addition to that, the agreement that was signed by Mr. Bagby is a DD-715. It's a broker agreement, not an agency agreement. And I think I'm out of time, and I do not want to belabor any additional points. Thank you very much. Thank you. Thank you. Good morning, Your Honors, and may it please the court, Barbara Smith for Mr. Bagby. I'd like to start my argument this morning by saying that this is a tragic case, but not a complicated one. The facts are certainly sad, but the legal issues are straightforward. My friend representing principals at an ABLE job explaining why there was no insurance contract in place at the time of Dr. Rothenberg's death, and thus no insurance coverage, I'd like to make two additional points. First, Mr. Bagby, my client, the insurance producer in this case, owed no duties to Mrs. Rothenberg, the plaintiff, because as a matter of law in Missouri, an insurance producer owes no duty to the third-party beneficiary of an unexecuted insurance contract. And secondly, Mr. Bagby had no duty to ensure that there was not a gap in insurance coverage. If this case is anything, it is a gap in coverage case. And as Judge Benton pointed out, there are numerous Missouri state court cases holding that an insurance producer does not have an obligation to ensure that there's not a gap in coverage and does not have an obligation to ensure that the person being insured makes a premium payment. The first thing I heard my friend on the other side say in his argument today is that there are facts in this case supporting the idea that there's a duty. But Missouri law is clear in Lopez, the Supreme Court in 2005, that whether a duty exists is purely a question of law. It's not a fact question at all. As I suggested, there are numerous Missouri cases here establishing the scope of the legal duties of an insurance producer and separately establishing the scope of the legal duties of a financial advisor. Ms. Smith, as I understood the argument being made this morning, it was that your client was an agent both for Rob and Donna. What's your response to that argument? Well, the Emerson Electric case from the Missouri Supreme Court in 2012 says that an insurance producer has a duty to the insured, not to the beneficiary of the contract, but to the insured, which would be Dr. Rothenberg. And the Fork case from 1933, the only thing better than on-point precedent is old on-point precedent, says that an insurance company doesn't owe a duty to a person designated as a beneficiary in an application for life insurance. I think taking those two decisions together means that the duty here runs to Dr. Rothenberg, not to Mrs. Rothenberg. All of the cases that I heard the other side cite were either out-of-state and therefore, I think, not particularly persuasive on this question of Missouri law, or they related to insurance policies that had actually been executed. And the distinction between an executed policy and an unexecuted policy is the critical one for purposes of this case. If you have an executed insurance policy, there are different obligations that run both from the company who issues the policy and from the insurance producer. But when you have an unexecuted policy, there's just simply no duty to a third-party beneficiary. There's also, as Judge Benton explained in the Boardwalk Apartments case from 2009, no heightened duty of care for an insurance producer in a context like this one. I think that case also stands for the proposition that you can interpret and apply the scope of an insurance contract and any duties that run pursuant to it on a motion for summary judgment, which is the posture we have here. Ms. Smith, as I looked at the district court opinion, and I may be wrong, but it looked to me like it relied on cases that were relevant to the principal Bagby relationship to make conclusions about duties that would flow from the Rob Rothenberg-Bagby relationship. Number one, am I right about that? And number two, I'm not sure that would be the appropriate way to analyze it. How would you have us analyze the Rob Rothenberg-Bagby relationship? So I think some of those cases go to the scope of whether there is an agency relationship, which is important for the other claims in this case. But for purposes of count three and four, which are the negligence claims against Mr. Bagby, the question, as I understood you to correctly articulate it, is what is Mr. Bagby's duty to the insured? What is his duty to Dr. Rothenberg? And if any, what is his duty to Mrs. Rothenberg? And for purposes of the explanation of the scope of that duty and obligation, I'd again point to the Emerson Electric case from Missouri Supreme Court from 2012 that talks about the duty of the insurance producer, Mr. Bagby, running to the insured, Dr. Rothenberg. I'd also again point to the Fork case, which talks about there not being a duty to a third-party beneficiary of an un-executed policy. And I'd point to the Manzella and Boardwalk Apartments case for the proposition that there's not a heightened duty from an insurance producer in this particular context. I also think the Roth case is informative on this because the allegations in that case are quite similar to the ones made here. The insurance producer was sometimes providing insurance advice and sometimes providing financial services advice. And the Missouri Appellate Court was clear that just because you're doing both of those things doesn't mean that you have a heightened duty of care as an insurance producer. When the court's evaluating whether you've been negligent, whether Mr. Bagby in this case has been negligent as an insurance producer, it looks to the scope of the duty of an insurance producer. And in evaluating whether he was negligent as a financial advisor, it looks to the separate financial advisory cases and what Missouri courts say about negligence in those contexts. But doing both of those things doesn't heighten the duty in either sphere. How about Blevins? Would that be another way of looking at it under Blevins? That if she is a third-party beneficiary, there has to be a separate tortious action by the agent with respect to the third-party beneficiary. Is that another way to look at it? I think about looking at the scope of a duty to a third-party beneficiary under the heightened duty cases. And those, to me, say you can have duties to third-party beneficiaries if you specifically contract for them. So if there were a contract, and there isn't one in this case, between the insurance producer and the beneficiary saying, I'm providing certain services for you or ensuring certain benefits for you, that's one way to do it. The other way to have a heightened duty in a context like this from an insurance producer to a third-party beneficiary is the course and conduct of the relationship between the parties over time. And we simply, with the facts here, we have one or arguably two insurance contracts from 20 years ago in which the insurance producer provided an insurance contract, and then the insurance contract here. That's not an increased or heightened duty reflective of the course and conduct between the parties over time. I would like, in my last five seconds, to just say the dispute about who filled out the form, which was the factual dispute my friend on the other side raised this morning, is totally irrelevant to the legal conclusion whether there were any duties owed. So I have heard him articulate that that is a factual dispute, but not why that dispute is material to any of the legal issues before the court. Thank you. Thank you, Ms. Smith. Mr. Grineman, your rebuttal. Thank you, Your Honor. Counsel for Mr. Bagby says that a key issue here or point is whether the principal policy was executed or un-executed. To the extent that matters, the policy here was clearly executed. What they claim is lacking was a performance of a condition precedent, but the principal signed all the documents, sent them for delivery to Mr. Bagby, delivered them. Rob signed all the forms put in front of him, so we're clearly dealing with an executed contract. And I think a significant case for the court to consider is one that the appellees relied on. It's the Alberts v. Turnbull-Conway case. In that case, it was a legal malpractice case. The court declined to extend the exception to the general rule requiring privity to impose on attorneys a duty to prospective beneficiaries of undrafted, un-executed, testamentary documents. But in the course of its opinion, the court recognized that the Missouri Supreme Court in the Donahue v. Sugar-Thompson case held that beneficiaries specifically identified and failed but executed testamentary instruments, half-standing malpractice cases. And that's directly analogous to what our position is here. With respect to the point that Principal's Counsel raised that Rob didn't check the box asking for conditional receipt coverage. Again, the undisputed facts are that it was Mr. Bagby who filled out the application, not Rob. Mr. Bagby testified that he did that. A key set of factual issues in this case, Your Honors, that render summary judgment inappropriate, is the differences between Mr. Bagby's handwritten contemporaneous notes and his self-serving deposition testimony that varied from those notes given a year and five months later after he was sued. There's critical differences in terms of what he said he discussed with Rob when the documents were executed. There's critical differences in terms of what he said he discussed with Rob when he was on his bike ride, as to whether he just needed a voided check or something else might suffice. And whether he told Rob that he had no coverage, that's all in dispute. If the Court has no further questions, I will conclude. Thank you, Your Honors. Thank you, Mr. Greiman. The Court appreciates your appearance and other counsel as well. It's unfortunate circumstances, but we'll do our best to wrestle with it and issue an opinion in due course. Thank you very much, Your Honors. Counsel may be dismissed.